1, WOODARD, Judge.
This is an appeal from a judgment granting plaintiffs damages for a medical malpractice claim.
*13 FACTS
On December 4, 1988, Rita Alexander was treated at the emergency room of the Lafayette University Medical Center for complaints of chills, fever, vomiting, and weakness. Her spleen had been removed, which reduced the effectiveness of her immune system and increased the risk of bacterial infection. Dr. Charles Prejean, her treating physician, was aware that her spleen had been removed, but he diagnosed her malady as acute viral illness because her symptoms were consistent with that diagnosis and he detected no symptoms of bacterial infection other than fever. Without performing any tests to corroborate this diagnosis, Dr. Preje-an sent her home with prescriptions for pharmaceuticals and instructions to return if her symptoms persisted. She died in agony early the next morning. According to the autopsy report compiled by Dr. Emile Laga, Ms. Alexander’s death was caused by bilateral adrenal infarction (bleeding and death of the adrenal glands).
_ |2Ms. Alexander’s ex-husband, mother, and children sued the Medical Center through the Louisiana Department of Health and Hospitals for medical malpractice. A Medical Review Panel found that the evidence supported the conclusion that Dr. Prejean had failed to meet the applicable standard of care, and the trial court found for the plaintiffs in a bench trial. The Department now appeals, asserting as error (1) the finding that failure to admit the decedent for inpatient antibiotic treatment constituted substandard care, and (2) the finding that there was a causal relationship between Dr. Preje-an’s actions and Ms. Alexander’s death.
LAW
A court of appeal may set aside a finding of fact only if it is manifestly erroneous or clearly wrong. Stobart v. State, 617 So.2d 880 (La.1993). A finding is manifestly erroneous if it has no reasonable basis in the record viewed in its entirety, and a factfin-der’s choice between two permissible interpretations of the evidence cannot be manifestly erroneous. Id.
A plaintiff in a malpractice action must prove that the defendant physician failed to exercise reasonable care and diligence under the circumstances, and that the plaintiff suffered injury as a proximate result of this failure that he would not otherwise have suffered. La.R.S. § 9:2791. A trial court’s findings regarding these issues are reviewable under the manifest error standard because both are questions of fact. Edenfield v. Vahid, 621 So.2d 1192 (La.App. 3 Cir.1993).
I. Adequacy of Cake
The trial court found that the Department failed to “manage” Ms. Alexander properly, in that Dr. Prejean’s failure to admit her to the hospital, administer antibiotics, and perform tests constituted conduct below the standard of care required of an emergency room physician. The Department argues that Dr. Prejean did not deviate from the appropriate standard of care, because according to Drs. Prejean and Laga, her history and physical examination indicated only a viral infection.
The three members of the Medical Review Panel believed that Ms. Alexander should have been placed on antibiotics prior to discharge, and that a blood culture should have been performed. Dr. Phillip Dellinger testified that Dr. Prejean was negligent in failing to perform blood culture tests on and administer antibiotics to a woman whose spleen has been removed and who complains of chills, vomiting, and weakness, because these symptoms are strong indicators of a potentially fatal Igbacterial infection. Dr. Dellinger further testified that, even if bacterial infection were not the cause of Ms. Alexander’s death, she would have been hospitalized and medical care would have been more readily available to her if Dr. Prejean had not acted negligently. Dr. Mark Olivier stated in his deposition that Ms. Alexander did not appear to have been sufficiently ill to justify admittance to the hospital, on the basis of the evidence available, but that antibiotics would have increased her chances for survival.
The record clearly supports the trial court’s finding that Dr. Prejean’s treatment of Ms. Alexander constituted substandard care. The trial court was presented with two *14 reasonable interpretations of the medical evidence, each of which was supported by substantial expert testimony. Consequently, although this court might have reached a different conclusion, the trial court’s decision to credit the plaintiffs’ interpretation is not manifest error.
II. Causation
The cause of Ms. Alexander’s death is stated in the coroner’s report to be bilateral adrenal infarction, but there is no finding in the report regarding the stimulus for the bilateral adrenal infarction, which can be caused by bacterial as well as viral infections. The trial court found that Ms. Alexander’s adrenal infarction was the result of a bacterial infection. Consequently, the court found that Dr. Prejean’s failure to detect and treat the bacterial infection was the ultimate cause of her death. The Department argues that she did not die as a result of a bacterial infection, and therefore that Dr. Prejean’s failure to treat her for a bacterial infection did not cause her death, regardless of whether the failure constituted substandard care.
Pursuant to La.R.S. § 33:1563(E)(3), the cause of death designated by the coroner on the death certificate is the legal cause of death until it is overturned. However, this statute does not proscribe findings regarding the cause of the designated cause of death. Furthermore, according to the jurisprudence a death certificate is proof only of the death itself, not proof of the cause of death, and it is inadmissible for the purpose of showing the cause of death. Bailey v. State of Louisiana, 623 So.2d 704, 706 (La.App. 4 Cir.1993). A party may attack a coroner’s statement of the cause of a death pursuant to a claim for medical malpractice, regardless of whether he has followed the procedure prescribed in § 33:1563. Id. Thus, there is no statutory impediment to the trial court’s finding that a bacterial infection caused Ms. Alexander’s death.
14Pr. Prejean testified that none of Ms. Alexander’s symptoms were exclusively indicative of bacterial infection. He detected no evidence of infection upon physical examination, and her history did not suggest the presence of a bacterial infection. Dr. Laga testified that a bacterial infection of a magnitude sufficient to cause death would necessarily be accompanied by a focus of infection or manifestation in a body organ, which he did not find during the course of the Alexander autopsy. Dr. Jorge Martinez corroborated this testimony. Dr. Laga also testified that such an infection would be accompanied by a white blood cell count higher than Ms. Alexander’s. Dr. Laga could not rule out bacterial infection, however, because he did not perform a culture of her adrenal glands, and he stated that bacterial infection is one of the most common causes of bilateral adrenal infarction. Dr. Laga was the only physician who examined Ms. Alexander’s body post-mortem.
Dr. Dellinger and Dr. Robert Bucklin both testified that the objective findings contained in Dr. Laga’s autopsy report indicated a bacterial infection, and that a viral infection was highly unlikely to have been the cause of Ms. Alexander’s death. Dr. Dellinger farther testified that a bacterial infection need not be concentrated in a particular organ, and that the white blood cell count is a useful test, but not necessarily an accurate indicator of the level of infection present. Dr. William Mo-gabgab stated in a deposition that the existing evidence indicated that a bacterial infection caused the adrenal infarction, and that it is very rare in the United States for viral infections to do so. Drs. Cary Hernandez and Mark Olivier agreed that Ms. Alexander’s symptoms indicated that a bacterial infection caused her death.
There is plentiful evidence in the record to support the trial court’s determination that Ms. Alexander died as a result of a bacterial infection. Therefore, even though the contrary contention is also well-supported, the trial court did not commit manifest error in finding that Dr. Prejean’s failure to treat her for a bacterial infection caused her death.
CONCLUSION
For the foregoing reasons, we affirm the decision of the trial court in favor of the plaintiffs. Costs of this appeal are assessed against appellants.
AFFIRMED.